IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YADIRA CARRASQUILLO GONZALEZ, <br><br> **Plaintiff,** <br><br> v. <br><br> RICARDO ROSELLO-NEVAREZ, *et al.*, <br><br> **Defendants.** | CIVIL NO. 19-1414 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

On April 29, 2019, Plaintiff Yadira Carrasquillo Gonzalez ("Plaintiff") filed the instant suit alleging violations of her First, Fourth, and Fourteenth Amendment rights under the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"). Docket No. 1 at 4. Before the Court is a Motion to Dismiss advanced by co-Defendants Ricardo Rosello-Nevarez ("Rosello") and Hector M. Pesquera ("Pesquera") (collectively, "Defendants"). Docket No. 57. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

BACKGROUND[1]

On May 1, 2018, Plaintiff participated in Puerto Rico's National Strike. Docket No. 46 at 11. On or around 11:30 a.m., Plaintiff noticed that a group of police officers began throwing tear gas at the people participating in the march so she started to run away. *Id.* However, the police officers lined up in a manner that prevented protesters from fleeing the tear gas. *Id.* at 11-12. Trying to leave

---

[1] For purposes of the Motion to Dismiss, all facts are taken from Plaintiff's First Amended Complaint, Docket No. 46, and are presumed to be true.

the area, Plaintiff yelled at the police to stop their actions. *Id.* at 12. Nonetheless, Plaintiff was grabbed and pushed by co-Defendant Ignacio Loubriel Camareno, and was subsequently pepper sprayed for a prolonged period of time at very close range by co-Defendant Luis E. Ortiz Ortiz, Commander of the SWAT Team. *Id.* This caused Plaintiff temporary breathing difficulties, burning sensations, and inability to see. *Id.* She also suffered physical injuries and a mental breakdown that required medical attention. *Id.* at 14.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 570. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). The First Circuit has cautioned against confounding the plausibility standard with the likely success on the merits, explaining that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor," *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011), "even if seemingly incredible," *Sepulveda–Villarini v. Dep't*

*of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556). Even taking plaintiff's well pleaded allegations as true, however, Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Likewise, unadorned factual statements as to the elements of the cause of action are insufficient as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

## ANALYSIS

Defendants argue that all of Plaintiff's claims should be dismissed. First, they claim that Eleventh Amendment immunity bars Plaintiff's § 1983 claims seeking monetary damages. Docket No. 57 at 6-7. Second, Defendants assert that they cannot be held liable under the supervisory liability standard for the acts of subordinate SWAT officers that participated in Puerto Rico's National Strike. *Id.* at 7-15. Third, they contend that they are entitled to qualified immunity. *Id.* at 15-17. Finally, Defendants request that the Court decline the exercise of supplemental jurisdiction over the state law claims on the assumption that the Court will dismiss all federal claims. *Id.* at 17. The Court will address the arguments as to each claim in turn, beginning with the Eleventh Amendment immunity claim, continuing with the qualified immunity claim, then the sufficiency of Plaintiff's § 1983 claims, and concluding with the Puerto Rico law claims.

I.      **State Sovereign Immunity**

Defendants contend that they enjoy immunity from monetary damages under the Eleventh Amendment as to the official capacity claims. *Id.* at 6-7. This Court has already adjudicated this issue. Docket No. 25. The Eleventh Amendment bars suits seeking monetary damages against a

state in federal court, unless the state has waived its sovereign immunity or Congress has expressly overridden it. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 33 (1st Cir. 2006) (citing *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). The First Circuit has held that "that the principles of the Eleventh Amendment are fully applicable to the Commonwealth of Puerto Rico." *Torres v. P.R. Tourism Co.*, 175 F.3d 1, 3 (1st Cir. 1999) (citation omitted).

Furthermore, it is well-settled law that Eleventh Amendment immunity also extends to "arm[s] of the state" or instrumentalities of the State. *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 61 (1st Cir. 2003). Consequently, damages against the PRPD are precluded by the Eleventh Amendment. *Reyes v. Supervisor of Drug Enf't Admin.*, 834 F.2d 1093, 1097-98 (1st Cir. 1987). Specifically, this Court has repeatedly held that the Puerto Rico Police Department ("PRPD") is an "alter ego of the state" and, thus, immune from monetary liability in federal court. *See Nieves Cruz v. Com. of Puerto Rico*, 425 F. Supp. 2d 188, 192 (D.P.R. 2006); *Sanchez Ramos v. P.R. Police Dept.*, 392 F. Supp. 2d 167, 177 (D.P.R. 2005); *Cestero v. Rosa*, 996 F. Supp. 133, 142-43 (D.P.R. 1998).

Likewise, state officials in their official capacities are considered instrumentalities of the state, so that a suit against a state official in his or her official capacity is a suit against the state. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In the instant case, Plaintiff is seeking monetary damages, declaratory, and injunctive relief from Defendants, who were the commander-in-chief and the superintendent of the PRPD respectively, in both their official and personal capacities. Docket No. 46 at 5-6. Applying the principles stated above, Eleventh Amendment immunity bars Plaintiff's § 1983 claims seeking monetary damages against Defendants in their official capacity. *See* Docket No. 25.

Accordingly, Plaintiff's § 1983 claims for monetary relief against Defendants in their official capacity are **DISMISSED WITH PREJUDICE**.[2]

## II.    Qualified Immunity

To determine whether Defendants are entitled to qualified immunity here, this Court must evaluate "(1) whether the facts alleged or shown by [Plaintiff] make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of [Defendants'] alleged violation." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019) (citation omitted). As to the second prong, a right is "clearly established" if "the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted). The inquiry under the second prong turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation omitted). Therefore, qualified immunity will shield a defendant from liability if his or her conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004).

In § 1983 supervisory liability claims, "the 'clearly stablished' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (citations omitted). Finally, this Court must evaluate whether a person

---

[2] Because this analysis applies with equal force to the official capacity claims against the remaining Defendants, the Court **DISMISSES WITH PREJUDICE** all of Plaintiff's § 1983 claims for monetary relief. *See* Docket No. 25.

in Defendants' position "should reasonably have understood that [their] conduct jeopardized" constitutional rights. *Id.* at 7.

    A. Qualified Immunity and First Amendment Claims

Regarding the first prong of the qualified immunity analysis, whether Plaintiff's alleged facts make out a constitutional violation, "protest street marches . . . are forms of assembly and expressive speech protected by the First Amendment." *Sullivan v. City of Augusta*, 511 F.3d 16, 32 (1st Cir. 2007) (citation omitted). In addition, speech on public issues is "entitled to special protection" since it occupies the "highest rung of the [hierarchy] of First Amendment values." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (citations omitted). Thus, political demonstrations and protests are protected by the First Amendment. *See Boos v. Barry*, 485 U.S. 312, 318 (1988). Since Plaintiff alleges that police officers grabbed, pushed, and pepper-sprayed her while she was lawfully participating in a protest, a First Amendment protected activity, she successfully pled a constitutional violation.

As to the "clearly established" prong of the qualified immunity inquiry, the First Circuit has not expressly stated whether the right to assemble and protest free from excessive use of force from the police is clearly established. This absence "implicitly speaks to the fundamental and virtually self-evident nature of the First Amendment's protections." *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011). However, the Supreme Court has established that the First Amendment protects "peaceful demonstrations in public places." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972). It has also asserted that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for participating in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citations omitted). In addition, several Circuits have found that there is a clearly established right to conduct expressive activities. *E.g., Keating v. City of Miami*, 598 F.3d 753, 766

(11th Cir. 2010) (stating that individuals have a clearly established right to "assemble, protest, and demonstrate peacefully."); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 671-72 (7th Cir. 2009) (affirming that it is well-established that speech protesting matters of public concern is entitled to constitutional protection); *Papineau v. Parmley*, 465 F.3d 46, 58 (2d Cir. 2006) (expressing that there is a "clearly established constitutional right to protest.").

As a result, to the extent Plaintiff alleges that police officers intervened and exercised excessive force against her while she was peacefully protesting, she sufficiently plead a violation of a clearly established constitutional right.

The second part of this prong requires this Court to determine whether it was clearly established that a supervisor would be liable for constitutional violations of their subordinates in this context. Plaintiff alleges that the constitutional violations stemmed from Defendants' orders, their failure to adopt measures to prevent constitutional violations, and their failure to screen, train, supervise, and discipline police officials under their command. Docket No. 46 at 16-18. A supervisor may be held responsible if "he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). Therefore, a supervisor will be liable if he supervises, trains, or hires subordinates with deliberate indifference towards the possibility that their deficient performance may eventually contribute to a civil rights deprivation. *Id.* Specifically, a police supervisor's failure to implement policies, protocols, or correct training are bases for the imposition of supervisory liability under § 1983. *Marrero-Rodriguez v. Municipality of San Juan*, 677 F.3d 497, 502 (1st Cir. 2012). Therefore, it was clearly established that Defendants could be responsible under supervisory liability for the First Amendment violations alleged by Plaintiff.

Finally, this Court must examine whether a reasonable person in Defendants' position should have reasonably understood that their conduct jeopardized Plaintiff's First Amendment rights. For reasons that will be discussed thoroughly below, *infra* III, the judicial settlement agreement (the "Agreement") between the United States Department of Justice ("DOJ") and the Commonwealth of Puerto Rico gave Defendants clear notice that the PRPD's practices jeopardized First Amendment rights. Thus, any reasonable persons in their corresponding positions would have understood that First Amendment violations would occur if the Agreement's dispositions were not appropriately implemented.

Consequently, since Plaintiff's allegations make out a constitutional violation of clearly established First Amendment rights, Defendants have failed to establish that, at this stage of the proceedings, they are entitled to qualified immunity for the First Amendment claims.

B. Qualified Immunity and Fourth Amendment Claims[3]

The Fourth Amendment protects citizens against unreasonable force, searches, and seizures by the government. U.S. Const. amend. IV. Establishing a Fourth Amendment excessive force claim requires a showing that the defendant's use of force was unreasonable considering the totality of the circumstances, "without regard to the [] underlying intent or motive." *Graham*, 490 U.S. at 397; *see Morelli v. Webster*, 552 F.3d 12, 23 (1st Cir. 2009). Courts should particularly evaluate "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted); *see Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir.

---

[3] Plaintiff's First Amended Complaint states that her Fourteenth Amendment rights were violated, Docket No. 46 at 10, but her claims allege excessive force. Since the constitutional standard that governs a claim alleging excessive force is the Fourth Amendment's "objective reasonableness" standard, Plaintiff's § 1983 claims will be analyzed under the Fourth Amendment, and any Fourteenth Amendment claims are **DISMISSED WITH PREJUDICE**. *Graham*, 490 U.S. at 388.

Case 3:19-cv-01414-SCC   Document 72   Filed 10/29/21   Page 9 of 15

9

2010). This analysis requires a careful balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interest" against the countervailing governmental interests at stake. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citations omitted). The Supreme Court has stated that:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (cleaned up). Thus, the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted).

Plaintiff adequately alleges a Fourth Amendment violation. As discussed above, she alleges that she was peacefully protesting when, without provocation or wrongdoing, she was grabbed, pushed, and pepper-sprayed from a close range. According to her, she was merely running away from tear gas and asking the police officers to discontinue their behavior. Docket 46 at 12. Therefore, Plaintiff's allegations, taken as true, are sufficient to establish that the police officers' conduct was unreasonable, considering the totality of the circumstances.

Regarding the "clearly established" prong, the First Circuit case law on the right to be free from the use of excessive force is clear and extensive. *Morelli*, 552 F.3d at 23. Given this well-established jurisprudence, there is no doubt that this right was clearly established. Furthermore, the First Circuit has determined that the supervisory liability doctrine in § 1983 cases is also clearly established. *See Hoyos*, 151 F.3d at 7. This Court has also held that a police superintendent, specifically co-Defendant Pesquera, may be subject to § 1983 supervisory liability for continuing or failing to ameliorate policies which cause a pattern of use of excessive force. *Guadalupe-Baez v.*

*Pesquera*, 819 F.3d 509, 516 (1st Cir. 2016). Hence, it was clearly established that Defendants could be responsible under supervisory liability for the Fourth Amendment violations Plaintiff alleges.

The remaining question, thus, is whether a reasonable person in Defendants' positions should have reasonably understood that their conduct jeopardized Fourth Amendment rights. The analysis below, *infra* III, is enough to conclude that the Agreement gave Defendants clear notice that the PRPD's practices threatened Fourth Amendment rights. Given that Defendants clearly knew—or, at a minimum, should have known—of the risks the PRPD posed to citizen's constitutional rights, they fail this reasonableness test. Thus, Defendants failed to establish that they are entitled to qualified immunity for the Fourth Amendment claims at this stage.

### III. Supervisory Liability under § 1983

It is well-settled law that § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham*, 490 U.S. at 393-94 (quotation marks and citation omitted). For a claim of supervisory liability under § 1983, a plaintiff must show that (1) "one of the supervisor's subordinates abridged the plaintiff's constitutional rights"; and (2) "the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Guadalupe-Baez*, 819 F.3d at 515. Further, to show deprivation of a federal right, "plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997) (citation omitted).

Liability under § 1983 "cannot rest solely on a defendant's position of authority." *Ocasio-Hernandez*, 640 F.3d at 16. At a minimum, the complaint must plead that each defendant was personally involved in the alleged constitutional violation. *See Pinto v. Nettleship*, 737 F.2d 130, 132

(1st Cir. 1984). When asserting a claim of supervisory liability, the plaintiff must show that the "responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Zapata*, 175 F.3d at 44 (citations omitted). For example, deliberate indifference "is shown where (1) there exists a grave risk of harm; (2) the official has actual or constructive knowledge of that risk; and (3) the official fails to take easily available measures to address that risk." *Id.* (citing *Hoyos*, 151 F.3d at 7). It requires a showing that "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir. 1989); *see also Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 92 (1st Cir. 1994). Actual notice of the wrongful conduct is not required because a supervisor "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted).

In addition, the plaintiff must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the supervisor and the underlying violation. *Zapata*, 175 F.3d at 44 (citations omitted). This requires a showing that "the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1380 (1st Cir. 1995) (citations omitted). This affirmative link can be shown through "a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado-Denis*, 23 F.3d at 582.

As discussed above, *supra* II, Plaintiff sufficiently alleged that Defendant' subordinates violated her First and Fourth Amendment rights. Thus, the first prong of supervisory liability, requiring that one of the supervisor's subordinates abridged Plaintiff's constitutional right, is met.

*See Guadalupe-Baez*, 819 F.3d at 514-15. The only issue left is whether Defendants' actions or inactions were affirmatively linked to the harm suffered by Plaintiff. *See id.*

On June 17, 2013, the DOJ and the Commonwealth of Puerto Rico entered into a judicial settlement agreement in the U.S. District Court for the District of Puerto Rico to remedy a pattern and practice of police misconduct by the PRPD. Docket No. 46 at 14-15. The goal of the Agreement was to identify, correct, and prevent police misconduct. *Id.* The Agreement mandates that the PRPD ensure that supervisors provide close and effective supervision to each officer under their command, as well as direction and guidance to improve constitutional police practices. *Id.* Supervisory personnel must closely review and report events of use of force, searches, seizures, stops, and detentions. *Id.* The Agreement also requires that the PRPD develop policies that set out clear requirements for supervisors that are consistent with generally accepted policing practices. *Id.*

The First Circuit has found that the DOJ Report that led to the Agreement between the DOJ and the Commonwealth of Puerto Rico, outlining a pattern of police misconduct, is sufficient evidence of a "widespread abuse" to put the supervisors of the PRPD on notice of ongoing violations. *Guadalupe-Baez*, 819 F.3d at 512, 516-17. It held that the Report, along with the alleged unconstitutional acts by the officers, was enough to create a plausible inference that co-Defendant Pesquera "either condoned or at least acquiesced in the offending conduct" that was affirmatively linked to the harm suffered by the plaintiff. *Id.* at 516. It stated that the existence of the DOJ Report put co-Defendant Pesquera on "luminously clear notice" that he may become liable as a supervisor if his acts and omissions contributed to the continuation of the incidents described in the Report. *Id.* at 517. The court further explained that for the defendant to claim that he was not aware of the substantial risk of serious harm to the plaintiff "would constitute deliberate indifference to the

reality of the dysfunction that Pesquera inherited when he took over as Superintendent of the PRPD." *Id.* at 516. Similarly, *Rolon-Merced v. Pesquera* found that plaintiff's allegation that the PRPD's supervisors had failed to implement "nationally accepted policies," along with the officer's alleged actions of various constitutional violations, was enough to meet the affirmative link test to survive the motion to dismiss. 2017 WL 888219, at *7-8 (1st Cir. Mar. 6, 2017).

At this stage, Plaintiff has pled sufficient facts to show this affirmative link, just like the plaintiffs in *Guadalupe-Baez* and *Rolon-Merced*. Just as *Guadalupe-Baez* found that the DOJ Report was sufficient to put superintendent Pesquera of the PRPD on notice of the widespread issue of police brutality and his potential liability as supervisor, the Court reaches the same conclusion here. The Report and Agreement put co-Defendants on ample notice of the ongoing problems with the PRPD and the risk of harm to citizens such as Plaintiff.

Plaintiff alleges that, as superintendent and commander-in-chief of the PRPD, co-Defendants are responsible for the actions and policies that led to the events described in the Amended Complaint. Docket No. 46 at 5-6. She states that Defendants allowed subordinate officers to execute a police operation plan that led to constitutional violations without providing training in crowd control policies. *Id.* at 16. In addition, Plaintiff asserts that Defendants were notified of the incidents described in the Amended Complaint but failed to adopt effective measures to prevent the violation of constitutional rights. *Id.* Furthermore, the First Amended Complaint alleges that Pesquera provided officials with unrestricted permission to use force and, pursuant to instructions from Rosello, gave orders to his subordinates to organize an ambush that led to the constitutional violations in question. *Id.* at 16-17. Thus, at this stage, Plaintiff has alleged sufficient facts to state a claim of supervisory liability against Defendants in their personal capacity.

After analyzing the Amended Complaint in the light most favorable to the nonmoving party, the Court finds that Plaintiff has plead sufficient facts to "raise the right to relief" under § 1983 supervisory liability "above a speculative level." *Twombly*, 550 U.S. at 544. Thus, Plaintiff's § 1983 claims survive as to Defendants in their personal capacity.

IV.   **State Law Claims**

Finally, Defendants request that the Court decline the exercise of supplemental jurisdiction over the state law claims on the assumption that the Court would dismiss all the federal claims. Docket No. 57 at 17.

The Court has supplemental jurisdiction to hear state law claims when, and if, the federal court has original jurisdiction in the action and the claims "form part of the same case or controversy." 28 U.S.C. § 1367(a); s*ee also Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (1st Cir. 2013) ("State and federal claims are part of the same 'case or controversy' . . . if they derive from a common nucleus of operative fact.") (citations omitted). Federal courts, however, should decline to exercise supplemental jurisdiction over a plaintiff's state law claims when all federal claims are dismissed. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."). Because the Court does not dismiss all of Plaintiffs' federal claims, the Court hereby **DENIES** Defendants' request to decline supplemental jurisdiction over the claims made under Puerto Rico law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Specifically:

1. Plaintiff's monetary § 1983 claims are hereby **DISMISSED WITH PREJUDICE** as to all Defendants in their official capacity. *See* Docket No. 25. Plaintiff's § 1983 claims as to Defendants in their personal capacity remain.

2. Plaintiff's Fourteenth Amendment claims are hereby **DISMISSED WITH PREJUDICE**.

3. Plaintiff's claim under Puerto Rico law remains.

Partial Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Friday, October 29, 2021.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
